**In The**

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

**NO. 09-22-00224-CV**
_____

**IN THE INTEREST OF T.J.**

**On Appeal from the 253rd District Court**
**Liberty County, Texas**
**Trial Cause No. 21DC-CV-00145**

**MEMORANDUM OPINION**

B.L.[1] appeals the trial court's order terminating his parental rights. In three issues, B.L. challenges the legal and factual sufficiency of the evidence supporting the best-interest finding and the termination ground specified in section 161.001(b)(1)(E), as well as the legal and factual sufficiency of the evidence supporting the trial court's appointment of the Department of Family and Protective Services ("the Department") as permanent managing conservator. *See* Tex. Fam.

---

[1]To preserve the privacy of the parties, we refer to the parties and the child by their initials or their familial relationship. *See* Tex. Fam. Code Ann. § 109.002(d); Tex. R. App. P. 9.8.

Code Ann. §§ 161.001(b)(1)(E), (2); 161.207. We affirm the trial court's judgment terminating B.L.'s parental rights.

BACKGROUND

In March 2021, the Department filed a petition seeking the termination of B.L.'s parental rights to his child, T.J. In June 2022, the trial court conducted a bench trial on the Department's petition. B.L. testified he was convicted of injury to a child by omission for an offense he committed in 2018, sentenced to thirty-five years of confinement, and had been incarcerated since August 2020. B.L. explained that he is eligible for parole in February 2038, when T.J. would be eighteen, but could be released in four years if his charge is reduced. B.L. testified that his conviction involved a 2018 offense concerning T.J.'s sibling, R.J., and B.L. explained that the omission was failing to get R.J. medical treatment for a couple of months after she suffered severe burns. The record includes a Judgment of Conviction by Court–Waiver of Jury Trial dated December 16, 2021, which shows that B.L. pleaded "guilty" to injury to a child by omission and that the trial court assessed punishment at thirty-five years of imprisonment.

B.L. explained that T.J. was born in December 2020, and T.J. was under the Department's care because T.J.'s mother ("Mother") violated her probation and was incarcerated when T.J. was released from the hospital. B.L. testified that T.J was "one and half, maybe two[,]" and was living with Mother's cousins, and B.L. wanted T.J. to have some contact with him and his cousin, who had agreed to provide

2

support for T.J. during his incarceration. B.L. explained that he never had contact with T.J. or provided support because he was incarcerated, and he had not spoken to the Department about his cousin. B.L. testified that T.J. is doing well in her current placement with her siblings. B.L. explained that it was in T.J.'s best interest to remain in her current placement and for him to keep his parental rights and have his cousin provide T.J. with financial support.

Heidi Airey, a Department caseworker, testified T.J. was doing amazing in her current placement with her sisters and was meeting her milestones. Airey testified that she never received any placement recommendations from B.L, and B.L. and his family have had no contact with T.J. since her birth and have made no effort to have any. Airey explained that Mother executed an affidavit to relinquish her parental rights to T.J. and wanted T.J. to stay with her family; however, Airey wanted T.J. to stay in her current placement where she recognizes her foster parents as her parents, because she does not know anyone else. Airey testified that it was in T.J.'s best interest to be adopted and to have contact with her biological siblings and Mother's family. Airey explained that she did not think it was in T.J.'s best interest to have contact with B.L. because it created confusion and possible problems in the future.

Cassie Sauer, a Department caseworker, testified that she had been in contact with B.L., and she explained that B.L.'s mother was facing the same charges as B.L. Sauer testified that T.J. was doing great in her current placement and was very happy

3

and bonded. Sauer further testified that it was in T.J.'s best interest to be adopted by her current placement, which has also adopted T.J.'s biological sisters. Sauer explained that T.J. has contact with her biological brothers who are placed in another home. Sauer testified that B.L. had not demonstrated an ability to ever be able to parent T.J., and she never had contact with B.L.'s cousin. Sauer also testified that it was in T.J.'s best interest for both parents' parental rights to be terminated so she could be adopted by her current placement.

B.L.'s cousin testified that T.J. could live with her, and she would help support T.J. during B.L.'s incarceration. B.L.'s cousin testified that she had not been in contact with T.J. or provided any support, and she had never contacted the Department about having access to T.J. B.L.'s cousin testified that she had only spoken with B.L.'s mother about having contact with T.J., and it was in T.J.'s best interest to have contact with B.L.'s family. B.L.'s cousin explained that it was not in T.J.'s best interest for B.L.'s rights to be terminated because he is paying for what he has done and needs a second chance.

The trial court found that clear and convincing evidence supported one predicate statutory ground for terminating B.L.'s parental rights and that termination of B.L.'s parental rights was in the best interest of T.J. *See id*. § 161.001(b)(1)(E), (2). The trial court appointed the Department as the permanent managing conservator of T.J. The trial court issued Findings of Fact and Conclusions of Law. B.L. appealed.

4

ANALYSIS

In issue one, B.L. contends that the evidence is legally and factually insufficient to support termination of his parental rights under section 161.001(b)(1)(E) of the Family Code. *See id.* § 161.001(b)(1)(E). In issue two, B.L. contends that the evidence is legally and factually insufficient to demonstrate that termination of his parental rights is in the best interest of T.J. *See id.* § 161.001(b)(2). We address issues one and two together.

Under legal sufficiency review, we review all the evidence in the light most favorable to the finding to determine whether "a reasonable trier of fact could have formed a firm belief or conviction that its finding was true." *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002). We assume that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could, and we disregard all evidence that a reasonable factfinder could have disbelieved or found to have been incredible. *Id.* If no reasonable factfinder could form a firm belief or conviction that the matter that must be proven is true, the evidence is legally insufficient. *Id.*

Under factual sufficiency review, we must determine whether the evidence is such that a factfinder could reasonably form a firm belief or conviction about the truth of the Department's allegations. *Id.* We give due consideration to evidence that the factfinder could reasonably have found to be clear and convincing. *Id.* We consider whether disputed evidence is such that a reasonable factfinder could not have resolved that disputed evidence in favor of its ruling. *Id.* If, in light of the entire

5

record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction, the evidence is factually insufficient. *Id.*

The decision to terminate parental rights must be supported by clear and convincing evidence, *i.e.*, "the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." Tex. Fam. Code Ann. § 101.007; *In re J.L.*, 163 S.W.3d 79, 84 (Tex. 2005). The movant must show that the parent committed one or more predicate acts or omissions and that termination is in the child's best interest. *See* Tex. Fam. Code Ann. § 161.001(b)(1), (2); *see also In re J.L.*, 163 S.W.3d at 84. We will affirm a judgment if any ground is supported by legally and factually sufficient evidence and the best-interest finding is also supported by legally and factually sufficient evidence. *In re C.A.C., Jr.*, No. 09-10-00477-CV, 2011 WL 1744139, at *1 (Tex. App.—Beaumont May 5, 2011, no pet.) (mem. op.).

Section 161.001(b)(1)(E) allows for termination if the trier of fact finds by clear and convincing evidence that the parent has "engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child[.]" Tex. Fam. Code Ann. § 161.001(b)(1)(E). A parent's conduct in the home can create an environment that endangers the child's physical and emotional well-being. *In re J.T.G.*, 121 S.W.3d 117, 125 (Tex. App.—Fort Worth 2003, no pet.). "The factfinder may infer from past conduct endangering

the child's well-being that similar conduct will recur if the child is returned to the parent." *In re M.R.J.M.*, 280 S.W.3d 494, 502 (Tex. App.—Fort Worth 2009, no pet.) (citation omitted).

For purposes of subsection (E), endangerment means to expose the child to loss or injury or to jeopardize a child's emotional or physical health. *Id.*; *In re M.L.L.*, 573 S.W.3d 353, 363 (Tex. App.—El Paso 2019, no pet.). Termination under subsection (E) must be based on more than a single act or omission and requires a voluntary, deliberate, and conscious course of conduct by the parent. *In re M.L.L.*, 573 S.W.3d at 363-64. A parent's conduct that subjects a child's life to instability and uncertainty endangers the emotional or physical well-being of a child. *Id.* at 363. Endangerment is not limited to actions directed toward the child and includes the parent's actions before the child's birth and while the parent had custody of older children. *In re J.O.A.*, 283 S.W.3d 336, 345 (Tex. 2009).

While incarceration, standing alone, does not constitute engaging in conduct which endangers the emotional or physical well-being of the child, it does support an endangerment finding "'if the evidence including the imprisonment, shows a course of conduct which has the effect of endangering the physical or emotional well-being of the child.'" *In re J.F.-G.*, 627 S.W.3d 304, 312–13 (Tex. 2021) (citation omitted). A parent's criminal history, including the nature of the crime, the duration of incarceration, and whether a pattern of escalating, repeated convictions exists, can support an endangerment finding. *Id.* at 313 (citation omitted). A parent's

7

lengthy incarceration presents a significant risk of endangerment to a child's well-being. *Id.* at 314 (citation omitted).

Regarding the best interest inquiry, we consider a non-exhaustive list of factors: (1) the desires of the child; (2) the child's emotional and physical needs now and in the future; (3) emotional and physical danger to the child now and in the future; (4) parental abilities of the individuals seeking custody; (5) programs available to assist these individuals to promote the child's best interest; (6) plans for the child by these individuals or by the agency seeking custody; (7) stability of the home or proposed placement; (8) acts or omissions of the parent which may indicate that the existing parent-child relationship is not proper; and (9) any excuse for the acts or omissions of the parent. *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976); *see also* Tex. Fam. Code Ann. § 263.307(b). No particular *Holley* factor is controlling, and evidence of one factor may be sufficient to support a finding that termination is in a child's best interest. *In re A.P.*, 184 S.W.3d 410, 414 (Tex. App.—Dallas 2006, no pet.). The best interest determination may rely on direct or circumstantial evidence, subjective facts, and the totality of the evidence. *In re N.R.T.*, 338 S.W.3d 667, 677 (Tex. App.—Amarillo 2011, no pet.). A parent's inability to provide a stable home supports a finding that termination is in the best interest of the child. *In re M.R.*, 243 S.W.3d 807, 821 (Tex. App.—Fort Worth 2007, no pet.).

The trial judge considered evidence that B.L. was convicted of injury to a child by omission because he failed to get R.J. medical treatment for a couple of months after she suffered severe burns. The trial court also considered the length of B.L.'s incarceration and that he was not eligible for parole until T.J. would be eighteen. The trial judge heard evidence that B.L. had never seen T.J. or provided any support and had not demonstrated an ability to ever be able to parent T.J. The evidence in this case concerning the seriousness of the crime and R.J.'s burn injuries and B.L.'s testimony that it was over two months before Mother's stepmother took R.J. to the hospital for medical care, together with the duration and consequences of B.L.'s incarceration, is relevant when the resulting abandonment presents a risk, as it did here, to T.J.'s physical and emotional well-being. *See In re J.F.-G.*, 627 S.W.3d at 314. B.L. testified that before his incarceration he knew Mother was pregnant with T.J. and that since T.J.'s birth, he has not seen or supported T.J.'s physical or emotional well-being, and the trial court could have viewed his testimony as evidence of his own omissions in caring for T.J.'s well-being. *See id.* at 315.

Additionally, the disruption caused by B.L.'s imprisonment was not "normal[,]" because B.L. was completely absent from T.J.'s life and would be until T.J. was eighteen, and an absence of that duration resulting from criminal conduct is sufficient to establish a "'pattern of conduct that is inimical to the very idea of child-rearing'" that endangered T.J'.s physical or emotional well-being. *See id.* at 316 (citation omitted). The trial court could have reasonably concluded that such a

9

disruption is qualitatively different than a short-term incarceration. *See id.* Despite B.L.'s and his cousin's testimony that his cousin would provide support to T.J. during his incarceration, the trial court heard evidence that neither B.L. nor his cousin tried to contact T.J. during her placement with Mother's family or the Department about their proposed plan to provide support.

Viewing the evidence in the light most favorable to the trial judge's findings, we conclude that the trial judge could reasonably have formed a firm belief or conviction that B.L. engaged in conduct or knowingly placed T.J. with persons who engaged in conduct that endangered T.J.'s physical or emotional well-being. *See* Tex. Fam. Code Ann. § 161.001(b)(1), (E); *In re J.F.-G.*, 627 S.W.3d at 312–16; *In re J.O.A.*, 283 S.W.3d at 345; *In re M.L.L.*, 573 S.W.3d at 363; *In re M.R.J.M.*, 280 S.W.3d at 502; *In re J.T.G.*, 121 S.W.3d at 125.

With respect to the best interest of the child, the trial court heard evidence that B.L. was serving a thirty-five-year sentence and not eligible for parole until T.J. would be eighteen. The trial judge heard evidence that B.L. never had contact with T.J. or provided any support and that T.J. was doing well in her current placement with her biological sisters. The trial judge also considered evidence that it was in T.J.'s best interest to remain in her current placement with family where she was happy and bonded and allowed to visit her biological brothers who were in another placement. The trial judge heard evidence that it was in T.J.'s best interest for B.L.'s parental rights to be terminated so she could be adopted.

10

Prompt and permanent placement of the child in a safe environment is presumed to be in the child's best interest. *See* Tex. Fam. Code Ann. § 263.307(a). As the sole judge of the credibility of the witnesses and the weight to be given to their testimony, the trial court could reasonably conclude that termination of B.L.'s parental rights is in the best interest of T.J. *See id*. §§ 161.001(b)(2), 263.307(a); *see also In re J.F.C.*, 96 S.W.3d at 266; *Holley*, 544 S.W.2d at 371–72; *In re M.R.*, 243 S.W.3d at 821. We conclude that the Department established, by clear and convincing evidence, that B.L. committed the predicate act enumerated in section 161.001(b)(1)(E) and that termination of B.L.'s parental rights is in the best interest of T.J. *See* Tex. Fam. Code Ann. § 161.001(b)(1)(E), (2); *In re C.A.C., Jr.*, 2011 WL 1744139, at *1. Accordingly, we overrule issues one and two.

In issue three, B.L. challenges the legal and factual sufficiency of the evidence supporting the trial court's appointment of the Department as managing conservator. The State argues that since B.L.'s challenges to the termination of his parental rights have failed, his challenge to the appointment of the Department as managing conservator also fails. We agree with the State.

Section 161.207 of the Texas Family Code provides that if the trial court terminates the parent-child relationship with respect to both parents, the Court shall appoint a suitable, competent adult, the Department, or a licensed child-placing agency as managing conservator of the child. Tex. Fam. Code Ann. § 161.207(a). Here, the trial court terminated the parental rights of all living parents. Having

11

affirmed the trial court's judgment terminating B.L.'s parental rights, B.L.'s challenge to the conservatorship appointment was subsumed in the issues related to the termination of his parental rights. *See In re D.N.C.*, 252 S.W.3d 317, 318 (Tex. 2008). Accordingly, we overrule issue three. Having overruled each of B.L.'s issues, we affirm the trial court's judgment terminating B.L.'s parental rights.

AFFIRMED.

_____
W. SCOTT GOLEMON
Chief Justice

Submitted on October 18, 2022
Opinion Delivered December 8, 2022

Before Golemon, C.J., Kreger and Horton, JJ.